UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETTY ANN BIRD,<br><br>           Plaintiff,<br>v.<br><br>PSC HOLDINGS I, LLC, et al,<br><br>           Defendants. | Civil No. 12-CV-1528 W (NLS)<br><br>**ORDER RESOLVING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE AND DENYING DEFENDANTS' MOTION TO COMPEL**<br><br>(Dkt. No. 64.) |

Plaintiff Betty Ann Bird ("Plaintiff") commenced this action in California Superior Court, alleging several causes of action arising from Defendants' termination of her employment. The case was removed to federal court by Defendants. (Dkt. No. 1.)

Currently pending before the Court is the parties' joint motion for determination of discovery dispute. (Dkt. No. 64.) The parties seek to resolve the issue of whether certain communications between Plaintiff and her domestic partner, Julie Hussey, are entitled to the protections afforded the attorney-client relationship. *Id.* After discovery was conducted on the issue, the parties filed the pending joint motion. *Id.* After reviewing the submissions, the Court ordered Plaintiff and Ms. Hussey to file declarations to supplement the record, and they were timely provided. (Dkt. Nos. 67-69.)

///

///

1

Defendants filed a response to the supplemental declarations.[1]  (Dkt. No. 70.)  The matter is now fully briefed and ripe for determination.

## I.     BACKGROUND

Plaintiff and Julie Hussey are domestic partners.  (Dkt. No. 64-5 ¶ 2.)  Ms. Hussey is a civil litigator and is employed at DLA Piper.  (Dkt. No. 66-1 at 6.[2])  Plaintiff is represented in this action by Edelson & Rezzo ("trial counsel").  (Dkt. No. 64-6 ¶ 1.)

Earlier in these proceedings, it came to this Court's attention that Plaintiff invoked attorney-client privilege and work product protection regarding certain communications with Ms. Hussey.  (Dkt. Nos. 15 at 7-10, 15-2 at 26-33.)  This Court deferred ruling on the propriety of these claims until after Plaintiff and Ms. Hussey were deposed, to allow Defendants the opportunity to investigate whether an attorney-client relationship existed.  (Dkt. No. 22 at 8.)  If there was an attorney-client relationship between Plaintiff and Ms. Hussey at the time of the communications, Plaintiff is entitled to designate them as privileged and therefore withhold them from disclosure.  Complicating the issue is the fact that Plaintiff also forwarded communications from her trial counsel to Ms. Hussey.  (Dkt. No. 64-5 ¶ 4.)  If Plaintiff and Ms. Hussey did not have an attorney-client relationship, this forwarding of information could constitute waiver of the privilege that existed between Plaintiff and her trial counsel.  *See* Cal. Evid. Code § 912.

### A.     Plaintiff's Argument

Plaintiff essentially argues that she had an implied attorney-client relationship with Ms. Hussey.  Although Ms. Hussey was not officially retained as counsel, Plaintiff asked Ms. Hussey for "legal guidance and legal opinion" regarding her dispute with her employer, and sought input on her "legal rights and options."  (Dkt. No. 64-5 ¶ 4.)  According to Plaintiff's trial counsel, a meeting took place between them, Plaintiff, and Ms. Hussey, where it was agreed that Ms. Hussey would be part of the "attorney team"

---

[1]Plaintiff objected to this response.  (Dkt. No. 71.)  Defendants obtained permission from this Court before filing the response.

[2]Citations to page numbers in the parties' submissions refer to those assigned by the ECF system.

and that she would be included in confidential communications.  (Dkt. Nos. 64-4 ¶¶ 3-4, 64-6 ¶ 2.)  In supplemental briefing ordered by the Court, Plaintiff states she was informed by her trial counsel that the attorney-client privilege would not be in jeopardy because Ms. Hussey was an attorney, and Plaintiff also states that she understood that Ms. Hussey would give her "guidance from a legal perspective."  (Dkt. No. 68 ¶¶ 4-5.)  Plaintiff states she shared information related to this lawsuit with Ms. Hussey solely because she is an attorney, and not because she was her partner.  *Id.* ¶ 9.  Ms. Hussey confirmed that she agreed to "help [Plaintiff] understand the litigation process."  (Dkt. No. 69 ¶ 4.)  She also unequivocally states that she has never been retained as Plaintiff's counsel.  *Id.* at 6.

### B. Defendants' Argument

Defendants assert that the communications withheld by Plaintiff should not be protected by the attorney-client privilege.  They note that Ms. Hussey never actually represented Plaintiff, and argue that she could not have represented her due to a potential conflict of interest.  (Dkt. No. 70 at 4-7.)  Plaintiff admits that she understood Ms. Hussey would not directly represent her in this action. (Dkt. No. 68 ¶ 8.)  Defendants also argue that Plaintiff is not entitled to rely on trial counsel's advice that her communications with her partner would be privileged.  (Dkt. No. 70 at 2.)

## II. ANALYSIS

### A. Governing Law

In an action in federal court that is based on diversity of citizenship, state law governs questions of attorney-client privilege.  Fed. R. Evid. 501; *Star Editorial, Inc. v. United States District Court for the Central District of California (Dangerfield)*, 7 F.3d 856, 859 (9th Cir. 1993) (California law governs questions of privilege in a diversity action where state law provides the rule of decision).  In California, privileges such as the one between attorney and client are created and governed by statute.  *HLC Properties, Ltd. v. Superior Court,* 35 Cal.4th 54, 59 (2005).

The attorney-client privilege under California law is outlined in § 954 of the

California Evidence Code.  It provides that "the client...has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer[.]"  The Code also defines both "lawyer" and "client."  Section 950 of the Code defines a "lawyer" as "a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation."  "Client" is defined as "a person who, directly or through an authorized representative, consults a lawyer for the purpose of retaining the lawyer *or securing legal service or advice from him in his professional capacity*[.]"  Cal. Evid. Code § 951, emphasis added.

The purpose behind such a privilege is to protect the confidential relationship between attorneys and their clients, in order to "promote full and open discussion of the facts and tactics surrounding individual legal matters."  *Mitchell v. Superior Court (Shell Oil Co.)*, 37 Cal.3d 591, 599 (1984).  "[T]he public policy fostered by the privilege seeks to insure 'the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense.'"  *Id.*; citing *Baird v. Koerner*, 279 F.2d 623, 629 (9th Cir. 1960).  Courts of this state have confirmed that preservation of the confidentiality of the attorney-client relationship outweighs the possibility of an unjust decision.  *Mitchell*, 37 Cal.3d at 600; *Costco Wholesale Corp. v. Superior Court (Randall)*, 47 Cal.4th 725, 732 (2009); *Kandel v. Brother Intern. Corp.*, 683 F. Supp. 2d 1076, 1081 n. 4 (C.D. Cal. 2010).

The party claiming the privilege has the initial burden of "establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of the attorney-client relationship."  *Costco*, 47 Cal.4th at 733.  Once that is established, "the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply."  *Id.*

The primary inquiry in determining the existence of an attorney-client relationship is "whether the client would have a reasonable expectation that an express or implied

agreement existed." *Legacy Villas at La Quinta HOA v. Centex Homes*, No. EDCV 11-845 VAP (OPx), 2012 WL 1536036 at *5 (C.D. Cal. Apr. 30, 2012); citing *Responsible Citizens v. Superior Court*, 16 Cal.App.4th 1717, 1733 (1993). When undertaking this evaluation, it is incumbent on this Court to "[take] into account all kinds of indirect evidence and contextual considerations that appear relevant to determining whether it would have been reasonable for the person to have inferred that she was the client of the lawyer." *Sky Valley Ltd. P'ship v. ATX Sky Valley, Ltd.*, 150 F.R.D. 648, 652 (N.D. Cal. 1993).

### B. Application

It is evident from the record that Plaintiff reasonably believed she had an implied attorney-client relationship with Ms. Hussey. Ms. Hussey is an attorney, and the parties do not appear to dispute this fact. The key element in this analysis is the fact that Plaintiff fits well within the boundaries of "client" fashioned by the California Evidence Code because she sought advice from Ms. Hussey in her professional capacity. She asked Ms. Hussey for legal guidance regarding her dispute with her employer, and sought input on her "legal rights and options." (Dkt. No. 64-5 ¶ 4.) She emphatically states that she would not have sought legal guidance from or shared legal documents with Ms. Hussey if she had not been an attorney. (Dkt. Nos. 64-5 ¶ 4, 68 ¶ 9.)

Defendants' arguments on this issue are well-taken. It is true that Plaintiff was aware that Ms. Hussey was not going to actually represent her in this action. (Dkt. No. 68 ¶ 8.) However, the majority of Defendants' argument stems from Ms. Hussey's position and viewpoint in this situation. They cite to the fact that Ms. Hussey states she and her firm did not represent Plaintiff, she did not give Plaintiff legal advice, and she did not agree to be Plaintiff's attorney. (Dkt. No. 70 at 4-5.) However, Defendants themselves note that this issue "must be considered from the perspective of a *reasonable* person in the position of the party disclosing confidential information." (Dkt. No. 66-1 at 11, emphasis in original.) This requires the Court to evaluate Plaintiff's perspective as the purported client, not Ms. Hussey's. Defendants also argue that Ms. Hussey may have

had a conflict in representing Plaintiff in this action due to her firm's involvement in previously representing Defendants. (Dkt. No. 70 at 6-7.) However, in this analysis, whether or not a conflict of interest existed is irrelevant. It may be true that Ms. Hussey would be prevented from actually representing Plaintiff due to a conflict; however, Plaintiff was not aware of the potential conflict. (Dkt. No. 64-5 ¶ 5.)

An additional wrinkle in this situation is the fact that Plaintiff was assured by her trial counsel that Ms. Hussey would be part of the "privileged group." (Dkt. No. 68 ¶ 4, *see also* Dkt. Nos. 64-4 ¶¶ 3-4, 64-6 ¶ 2.) Defendants correctly point out that merely agreeing that information should be confidential and subject to privilege does not make it so. *Oracle America, Inc. v. Google, Inc.*, No. C-10-3561 WHA (DMR), 2011 WL 3794892 at *4 (N.D. Cal. Aug. 26, 2011); Dkt. No. 70 at 2-4. However, a person unschooled in the law may be unaware of the nuances underlying the question of whether an attorney-client relationship exists, nuances which are aptly pointed out by Defendants. This lack of awareness can be precarious for the layperson, particularly when she is being guided by and puts her trust into several individuals who are, in fact, schooled in the law. If this layperson is assured by lawyers that she has a confidential attorney-client relationship with her attorney partner, belief and reliance on that information is reasonable. This is particularly so when no one disabuses her of this notion. *See People v. Gionis*, 9 Cal.4th 1196, 1210 (1995) (no privilege applied when attorney informs individual he wanted "no part in the legal proceedings").

To be sure, Plaintiff has a relationship with Ms. Hussey that extends beyond legal guidance. *See* Dkt. No. 68 ¶ 5 ("I made it clear that I wanted Julie Hussey to be kept informed and part of our communications *because she was my partner and an attorney whom I trusted completely.*") (emphasis added). It is admittedly difficult for this Court to attempt to unravel when Plaintiff may have relied on Ms. Hussey for legal guidance, and when she may have relied on her for personal support. In these circumstances, the Court finds that the different facets of the relationship cannot be unwoven in this action without undue harm and severe prejudice to Plaintiff. Ultimately, the Court is guided by the

public policy principles that favor "the right of every person to freely and fully confer and confide in one having knowledge of the law," *Baird*, 279 F.2d at 629, and the knowledge that the attorney-client privilege is fundamental is the proper functioning of the judicial system. *Mitchell*, 37 Cal.3d at 611.

The undersigned does not find that "any discussion with a close friend or family member who is a lawyer must be cloaked by privilege," as is feared by Defendants. (Dkt. No. 66-1 at 6.) This Court only finds that Plaintiff has met her burden to demonstrate that she reasonably believed an attorney-client relationship existed between her and her partner, taking into account the "indirect evidence and contextual considerations that appear relevant[.]" *Sky Valley Ltd. P'ship*, 150 F.R.D. at 652. Therefore, the communications in question are protected by privilege. However, although Plaintiff's belief was reasonable at the time the communications were made, it is now quite apparent to all that there is no actual attorney-client relationship between Plaintiff and Ms. Hussey. The Court advises the parties to bear this in mind, and proceed accordingly.

## IV.   CONCLUSION

After careful consideration of the parties' joint motion and supplemental submissions, Defendants' motion to compel disclosure is **DENIED**. By Order dated December 13, 2013, the remaining scheduling order deadlines in this action were vacated. (Dkt. No. 60.) An amended scheduling order resetting pre-trial dates shall issue in due course.

**IT IS SO ORDERED.**

DATED: April 8, 2014

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court